Gwin H. LONG, Appellant,

v.

The STATE of Texas, Appellee.

No. 12–02–00030–CR.

Court of Appeals of Texas,
Tyler.

April 11, 2007.

Discretionary Review Refused
Oct. 3, 2007.

Landon L. Northcutt, Michael Paul Gibson, for appellant.

James H. Owen, Harry E. White, for state.

Panel consisted of WORTHEN, C.J., GRIFFITH, J., and HOYLE, J.

### MEMORANDUM OPINION
### ON REMAND

JAMES T. WORTHEN, Chief Justice.

Gwin H. Long was convicted by a jury of five counts of gambling offenses. The trial court assessed punishment at sixty days in jail on each count, to run concurrently, and a $1000.00 fine on each count. On original submission, Appellant presented one issue asserting the trial court abused its discretion by admitting evidence obtained when officers exceeded the scope of a search warrant by searching a red caboose that was not specifically described in the warrant. This court affirmed the conviction. *Long v. State*, 108 S.W.3d 424 (Tex.App.-Tyler 2003). On petition for discretionary review, the court of criminal appeals found that the search exceeded the scope of the search warrant and that the trial court abused its discretion in admitting the business records, gift certificates, and cash seized from the red caboose. That court reversed our decision and remanded the case for further proceedings. *Long v. State*, 132 S.W.3d 443 (Tex.Crim.App. 2004). On remand, we found that the error was harmful and remanded the cause to the trial court for further proceedings.

*Long v. State,* 236 S.W.3d 218 (Tex.App.-Tyler 2004) (not yet released for publication). The court of criminal appeals reversed that decision and remanded the case for further analysis. *Long v. State,* 203 S.W.3d 352 (Tex.Crim.App.2006). We reverse and remand.

### BACKGROUND

After the sheriff's department received several complaints, the Henderson County Attorney drafted a letter dated February 1, 2000, advising that eight-liners are illegal gambling devices and their operation is a violation of the law. Recipients of the letter were instructed to voluntarily remove the eight-liners within seventy-two hours of receiving the letter. The letter warned that after the deadline, law enforcement agencies would pursue enforcement of the gambling laws. A deputy sheriff hand delivered the letter to Appellant around February 10, 2000.

Investigator Scott Wilson, working undercover, visited Appellant's place of business, Trains, on three different days in early March 2000 and played some of the eight-liner machines in the silver train car. Wilson testified that Appellant was in custody and control of the property and the currency used to bet in the machines. He also stated that the eight-liner machines are gambling paraphernalia that indicate a player's odds of winning. At trial, he described the machines and how they worked. He testified that an eight-liner is an apparatus by which the player can place a bet and win credits in exchange for cash placed in the machine. The credits can be used for replay, then or at a later time.

Wilson testified that Appellant explained to him that she no longer rewarded players with $5.00 Wal–Mart gift certificates. Instead, players could enter "tournament play." She entered the names, addresses, and phone numbers of players in a notebook along with the date and number of credits won. At the end of the week, the player with the highest score would win dinner for two and $50.00. Further, players could use the credits logged in the book to replay at a later date. Wilson testified that eight-liners operated as they were at Trains are not adapted solely for amusement purposes. They did not reward him with noncash merchandise prizes, toys, or novelties or representations of value redeemable for those items. They rewarded him with an option to win something of cash value, dinner for two and $50.00. Further, he was able to win more than ten times the amount he bet and playing involved no skill. Wilson also testified that he observed Appellant pay a player with a $5.00 Wal–Mart gift certificate and he saw other players use gift certificates to play by handing them to Appellant who would put $5.00 currency into the machine.

Appellant testified, explaining that prior to opening Trains as a business, she did research to determine if it was okay to get into that business. She visited a club and some stores and saw that such businesses were being run in several places. She played some of the games where players could win $5.00 Wal–Mart gift certificates. A club owner told her that Ray Roberts was their vendor so she talked to Roberts. She also went to Dave and Buster's, where they had similar games that dispensed tickets the players could trade for prizes. She explained that at Dave and Buster's players could trade the tickets for anything from little pencils all the way up to stereos and televisions. She also went to Chuck E. Cheese and saw similar games. This sounded like the same thing to her and she did not see anything wrong with it. She did not consult a lawyer to determine if she was in violation of any gam-

bling laws. She never spoke to the county attorney. She opened her business the first week of January 2000.

Defense witnesses testified that until mid or late February, winners received Wal–Mart gift certificates but then Appellant began "tournament play." From that point on, the weekly winner was to receive dinner but not cash. Appellant explained that she closed her business after receiving the county attorney's letter but opened up again for amusement only. She testified that her customers were mostly elderly ladies who had nothing else to do. It was her idea to take the person who accumulated the most points in a week out to dinner. There were 109 entries in the tournament play notebook. Appellant also testified that some people played but did not participate in tournament play and never returned because she could not pay out anything. She never took anyone out to dinner because the same week she began tournament play, Ray Roberts, the owner of the eight-liners, told her that was against the rules and she needed to quit. From that point on, "nothing else went into the book." She told her customers that the use of the eight-liners was for amusement only. However, her definition of "for amusement only" included two steak dinners. She testified that there was never a $50.00 prize offered. At some point after he had delivered the letter from the county attorney, the sheriff's deputy came back to see if she was in compliance. She told him she was operating for amusement only but did not tell him about the possibility of winning steak dinners. She could not remember if she had begun to offer steak dinners at the time of his second visit.

Rita Allen testified that in February 2000, she operated a business in Henderson County and had eight-liners available to play. After speaking with the county attorney, she understood that she could let people play as long as she did not give out any prizes, not even steak dinners.

Items seized from the red caboose included fifteen $5.00 Wal–Mart gift certificates, $1,575.00 in cash, weekly business receipts from Roberts Vending for January and February 2000, and bank records in Appellant's name. In January and February 2000, Appellant deposited $30,373.90 in her bank account. From the receipts, Wilson deduced that Appellant and Ray Roberts had a fifty-fifty split. Appellant explained that although the receipts from Roberts seem to indicate a fifty-fifty split, she returned ten percent to him to cover the cost of the machines, making their split sixty-forty.

### APPLICABLE LAW

The court of criminal appeals having previously found error, we must determine if the error caused harm. The erroneous admission of evidence obtained in violation of the Fourth Amendment is constitutional error analyzed pursuant to Texas Rule of Appellate Procedure 44.2(a). *Long,* 203 S.W.3d at 353. Reversal is required unless we can determine beyond a reasonable doubt that admission of the evidence found in the red caboose did not contribute to the conviction or sentence. TEX.R.APP. P. 44.2(a); *Jones v. State,* 119 S.W.3d 766, 777 (Tex.Crim.App.2003). If there is a reasonable likelihood that the error materially affected the fact finder's deliberations, the error was not harmless. *Jones,* 119 S.W.3d at 777. We are to calculate, as nearly as possible, the probable impact of the error on the fact finder in light of the other evidence. *Id.* We consider whether the inadmissible evidence added something that was calculated to cause the fact finder to return a different verdict than it would have if the evidence had not

been admitted. *Hill v. State,* 692 S.W.2d 716, 723 (Tex.Crim.App.1985).

■ Factors we consider include the importance of the inadmissible evidence to the prosecution's case, whether the evidence was cumulative, the presence or absence of evidence corroborating or contradicting material inadmissible evidence, and the overall strength of the prosecution's case. *Delaware v. Van Arsdall,* 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986). While we do not focus on the propriety of the outcome of the trial, the presence of overwhelming evidence supporting the finding in question can be a factor in the evaluation of harmless error. *Wesbrook v. State,* 29 S.W.3d 103, 119 (Tex.Crim.App.2000). We consider whether there was a reasonable possibility that the error, either alone or in context, moved the jury from a state of nonpersuasion to one of persuasion as to the issue in question. *Id.*

Appellant was charged with two counts of gambling promotion, and one count each of keeping a gambling place, possessing a gambling device, and possessing gambling paraphernalia. A person commits gambling promotion if she intentionally or knowingly operates or participates in the earnings of a gambling place or intentionally or knowingly, for gain, becomes a custodian of anything of value bet or offered to be bet. TEX. PENAL CODE ANN. § 47.03(a)(1), (3) (Vernon 2003). A person commits an offense if she knowingly uses as a gambling place any building owned by her or under her control. *Id.* § 47.04(a). A person commits an offense if, with the intent to further gambling, she knowingly possesses any gambling device that she knows is designed for gambling purposes. *Id.* § 47.06(a). Finally, a person commits an offense if, with the intent to further gambling, she knowingly possesses gambling paraphernalia. *Id.* § 47.06(c).

Playing a gambling device and betting money or other things of value constitute gambling. *Id.* § 47.02(a)(3). "Bet" means an agreement to win or lose something of value solely or partially by chance. *Id.* § 47.01(1). A gambling device is defined as any electronic, electromechanical, or mechanical contrivance that for a consideration affords the player an opportunity to obtain anything of value, the award of which is determined solely or partially by chance, even though accompanied by some skill. *Id.* § 47.01(4). The term "gambling device" does not include any electronic, electromechanical, or mechanical contrivance designed, made, and adapted solely for bona fide amusement purposes if the contrivance rewards the player exclusively with noncash merchandise prizes, toys, or novelties, or a representation of value redeemable for those items, that have a wholesale value available from a single play of the game or device of not more than ten times the amount charged to play the game or device once or $5.00, whichever is less. *Id.* § 47.01(4)(B).

### ANALYSIS

■ Wilson testified that he entered an establishment operated by Appellant and placed bets and played eight-liner machines. The eight-liners in Appellant's establishment meet the statutory definition of gambling devices. *See Hardy v. State,* 102 S.W.3d 123, 132 (Tex.2003). However, it is possible to offer play on an eight-liner without being in violation of the gambling laws if the player is rewarded with items meeting certain specifications. *See* TEX. PENAL CODE ANN. § 47.01(4)(B); *Hardy,* 102 S.W.3d at 131. Appellant testified that she believed that offering steak dinners removed her actions from the purview of the gambling statutes. Although her belief does not dictate how a prize is char-

acterized under section 47.01(4), this testimony relates to the issue of intent.

■ In addition to the elements addressed directly by Wilson's testimony, the State was required to prove a culpable mental state for each count. To obtain a conviction on count one, it had to prove Appellant intentionally or knowingly operated or participated in the earnings of a gambling place. To obtain a conviction on count two, it had to prove Appellant intentionally or knowingly became a custodian of United States currency that was bet or offered to be bet for gain. Count three required the State to prove Appellant knowingly used a building that was under her control as a gambling place. Counts four and five required the State to prove Appellant knowingly possessed a gambling device and gambling paraphernalia with the intent to further gambling. Intent may be inferred from Appellant's actions or conduct. *See McGee v. State*, 774 S.W.2d 229, 234 (Tex.Crim.App.1989). Proof of a culpable mental state almost invariably depends upon circumstantial evidence. *Montgomery v. State*, 198 S.W.3d 67, 87 (Tex.App.-Fort Worth 2006, pet. ref'd).

The State argued that Appellant's intent to gamble was shown because her business remained open after Allen told her the county attorney said they could not give out any prizes. However, Allen was wrong when she said an operator of eight-liners cannot give out *any* prizes. *See* TEX. PENAL CODE ANN. § 47.01(4)(B). Appellant would not be required to comply with Allen's erroneous information and her failure to do so cannot lend significant weight to the State's argument that it shows intent. The State argued that intent could be inferred from the fact that Appellant offered steak dinners and $50.00 as prizes. Appellant and the other defense witnesses denied that $50.00 was a poten-

tial prize. Appellant explained that she did not think a steak dinner constituted "payout" and therefore did not think it would violate the gambling laws. Also, the State argued intent could be inferred from Appellant's failure to tell the deputy that she was offering these prizes. Appellant testified that she could not remember when the deputy visited her. She was not sure if she had even thought of the tournament play idea at the time he was there. Finally, on the issue of intent, the State relied heavily on the inadmissible bank statements and records seized from the caboose.

In its argument to the jury, the State emphasized the bank deposits explaining that it could infer intent to commit the offenses because Appellant deposited thirty thousand dollars in less than eight weeks. The prosecutor said the "intent is in the money," "money is where the greed is," and "she was consumed by the greed of the situation." He said the "money shows you the motive" and the "motive shows you the intent." He made more than a dozen references to greed and money.

When she first opened Trains, Appellant used Wal-Mart gift certificates as currency to play the eight-liners and as awards for credits. Appellant shut down her business after receiving the letter from the county attorney and then reopened with modified rules of play that Appellant thought resolved the problem. Although Wilson testified otherwise, witnesses for the defense said Appellant stopped using the gift certificates by late February. Further, Appellant indicated that she stopped offering dinners when the owner of the machines told her she should not offer dinners to the winner. She never actually awarded a dinner to anyone. The record thus shows Appellant made changes in attempts to comply with the law.

Defense witnesses testified that they spent no more than ten dollars per visit at Trains. Two of the three said they did not go there very many times. Less than $400.00 in cash was found in the silver train car along with $230 in Wal–Mart gift certificates. There were 109 entries in Appellant's tournament play notebook, reflecting tournament players for one week. Even though some of that week's players were not listed, the jury could infer from this evidence that Trains was not a big money maker. Further, if Appellant thought that by virtue of awarding a steak dinner to the winning player she was offering play purely for amusement purposes, thereby taking the machines out of the definition of gambling device, then she did not have intent to 1) operate or participate in the earnings of a gambling place, 2) be the custodian of money that was bet or offered to be bet, 3) use a building under her control as a gambling place, 4) further gambling while possessing eight-liners, or 5) further gambling while possessing paraphernalia that recorded bets.

The evidence found in the caboose was not cumulative. Those records are the only evidence showing that Appellant and Roberts made a substantial amount of money from use of the eight-liners. The admissible evidence of intent was not overwhelming. Taking the inadmissible evidence out of the equation, there is a reasonable likelihood the jury would not infer intent to use the eight-liners to further gambling based on Wilson's testimony, Allen's testimony, and the fact that Appellant did not fully explain her method of operation to the deputy. See Hill, 692 S.W.2d at 723. In the absence of a large profit, as shown by the inadmissible evidence, it is a reasonable possibility that the jury would have believed Appellant's testimony that she did not think her method of doing business constituted gambling and that she offered entertainment from which she made only a little money. See id.

### CONCLUSION

Based on this record, it is a reasonable possibility that the jury could look at the evidence in the absence of that found in the caboose, or any reference to it, and be convinced that Appellant believed she was not offering people the opportunity to gamble. Thus, it is a reasonable possibility that the erroneous admission of the items found in the caboose moved the jury from a state of nonpersuasion to one of persuasion as to the issue of intent. See Wesbrook, 29 S.W.3d at 119. Therefore, we cannot determine beyond a reasonable doubt that admission of the evidence found in the caboose did not contribute to Appellant's convictions on all five counts. See TEX.R.APP. P. 44.2(a). We conclude admission of the evidence found in the red caboose was harmful error.

We *reverse* the trial court's judgment and *remand* this cause for further proceedings.