**Opinion filed July 14, 2016**



In The

# Eleventh Court of Appeals

_____

## Nos. 11-14-00254-CR & 11-14-00255-CR

_____

## ROBERT CONRAD ZEPEDA, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 35th District Court**
**Brown County, Texas**
**Trial Court Cause Nos. CR22897 & CR22898**

### M E M O R A N D U M   O P I N I O N

The jury found Appellant, Robert Conrad Zepeda, guilty of the first-degree felonies of aggravated assault with a deadly weapon and burglary of a habitation, both with habitual offender enhancements. *See* TEX. PENAL CODE ANN. §§ 22.02, 30.02 (West 2011), § 12.42(d) (West Supp. 2015). The jury assessed punishment for each offense at confinement for life, and the trial court sentenced Appellant

accordingly and ordered that the sentences shall run concurrently. Appellant challenges his two convictions in three issues that all relate to his being shackled during trial. We affirm.

## I. *Evidence at Trial*

Appellant attended a party in Brownwood. While there, he learned that his ex-girlfriend, Amanda Mascorro, was dating another man. After Appellant learned this, he rode with two other partygoers to Mascorro's home. There, Appellant banged on Mascorro's door. When she did not answer, Appellant went to the side of her home and forcibly pulled an air conditioning unit from the window because he "had to get in." However, before Appellant entered the home, Mascorro realized that Appellant was breaking in, and she fled. Appellant chased her and caught her in the street; after a struggle, he forced her back into her home.

Mascorro testified that Appellant hit her fifty to sixty times. Mascorro grabbed a power drill in an attempt to defend herself. Appellant took the drill from her and struck her several times with it. Police arrived approximately three hours after Appellant first entered Mascorro's home. By this time, Mascorro had suffered significant injuries to her face and was transported to the hospital. Medical personnel treated her for her injuries that included bleeding in her brain, multiple facial fractures, missing and broken teeth, and lacerations. Several photographs of Mascorro's injuries, which were taken at the scene and at the hospital, were entered into evidence as State's Exhibit Nos. 74 through 79 and Nos. 88 through 96.

Appellant testified at trial. After his direct examination, the court granted a brief recess for Appellant to consult with his attorney. When Appellant returned to the courtroom, he was shackled. The reporter's record does not include testimony that explained the trial court's decision to shackle Appellant. But the trial court's notes were entered into the clerk's record and indicated that Appellant "refused to

2

return to courtroom . . . [o]rdered bailiffs to shackle and physically return [Appellant] to courtroom." Appellant objected to the use of shackles at trial.

## II. *Discussion and Analysis*

Appellant complains in his first issue that the use of shackles in the presence of the jury impermissibly infringed upon his constitutional presumption of innocence. He argues in his third issue that, because of this error, the trial court should have granted a new trial. In his second issue, Appellant contends that the trial court erred when it failed to make specific findings on the record that showed the exceptional circumstances that required him to wear the shackles.

### A. *Use of Shackles and Standard of Review*

The right to a fair trial is a fundamental liberty secured by the Fourteenth Amendment. *Estelle v. Williams*, 425 U.S. 501, 503 (1976). In our criminal justice system, the presumption of innocence is a basic component of a fair trial. *Id.* When the jury sees the defendant in shackles, his constitutional presumption of innocence is undermined. *Bell v. State*, 415 S.W.3d 278, 281 (Tex. Crim. App. 2013). The trial court should make all efforts to prevent a jury from seeing a defendant in shackles unless there has been a showing that there are extreme or exceptional circumstances requiring a need for such restraints. *Id.*; *see also Long v. State*, 823 S.W.2d 259, 282 (Tex. Crim. App. 1991). Under such exceptional circumstances, it is within the discretion of the trial court to require the defendant to be tried in restraints. *Bell*, 415 S.W.3d at 281. But the record must manifest the trial court's reasons for placing the defendant in restraints. *Id.*

We review the trial court's ruling for abuse of discretion. *Id.*; *see also Long*, 823 S.W.2d at 282. If we conclude that the use of shackles constituted error, then we must determine whether it was harmful. Because the use of shackles implicates constitutional rights, we must "reverse a judgment of conviction or punishment

unless [we] determine[] beyond a reasonable doubt that the [shackling] did not contribute to the conviction or punishment." TEX. R. APP. P. 44.2(a); *see also Wynn v. State*, 219 S.W.3d 54, 60 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (citing *Deck v. Missouri*, 544 U.S. 622, 630–31 (2005)). In evaluating the impact of error under Rule 44.2(a), we may consider the presence of overwhelming evidence of guilt. *Motilla v. State*, 78 S.W.3d 352, 357 (Tex. Crim. App. 2002).

### B. Rule 44.2(a) Harm Analysis

Even if we assume, without deciding, that the use of shackles presented error—either substantively or procedurally—reversal is nonetheless required unless we can determine beyond a reasonable doubt that the error did not contribute to the conviction or punishment. TEX. R. APP. P. 44.2(a); *Jones v. State*, 119 S.W.3d 766, 777 (Tex. Crim. App. 2003). We are to calculate, as nearly as possible, the probable impact that the error had on the factfinder in light of the other evidence. *Jones*, 119 S.W.3d at 777. If there is a reasonable likelihood that the error materially affected the factfinder's deliberations, the error was not harmless. *Id.* We consider whether there was a reasonable possibility that the error, either alone or in context, moved the jury from a state of nonpersuasion to one of persuasion as to the issue in question. *Wesbrook v. State*, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000).

### 1. Harm Analysis on Conviction

While we do not focus on the propriety of the outcome of the trial, the presence of overwhelming evidence supporting the finding in question can be a factor in the evaluation of harmless error. *Long v. State*, 236 S.W.3d 220, 224 (Tex. App.—Tyler 2007, pet ref'd) (citing *Wesbrook*, 29 S.W.3d at 119). Appellant testified that he banged on Mascorro's door and that, when she did not answer, he forcibly pulled an air conditioning unit from a window on the side of her home and climbed inside. When Mascorro attempted to flee, Appellant caught her in the street

and forced her back into her home. There, he "pushed [a power drill] into her face," fractured her nose with his fists, and caused the injuries depicted in the photographs that were admitted as exhibits at trial. Appellant hit Mascorro because he "was very angry," and "when [he] hit her the first time, [he] didn't stop." Appellant said, "I'm not going to sit here and lie to the jury, that, yes, I hit [Mascorro]."

When the State asked why Appellant was violent upon his arrest, Appellant stated that he was upset because he was "going to jail for hurting [Mascorro]." Appellant also read a poem at trial that he had written about his actions. The poem, entitled "A Poem From the Animal," read as follows: "My brown queen, how could I have ever hurt you? Blood on my hands, bruises on your beautiful face. In time the swelling goes down, wounds heal. Still the scars remain. My heart continues to bleed profusely." When the State asked Appellant if he had a temper, he responded, "Do I feel like I have a violent temper? Y'all see what I've done." When the State asked Appellant if he was guilty, Appellant responded, "I'm telling each and every person in the jury that you don't have to waste time to deliberate." When the State asked Appellant a second time if he was guilty, Appellant replied, "I'm guilty."

Courts have noted the powerful effect that an out-of-court confession can have on jurors. *See McCarthy v. State*, 65 S.W.3d 47, 56 (Tex. Crim. App. 2001) ("[A] defendant's own confession is probably the most probative and damaging evidence that can be admitted against him.") (quoting *Arizona v. Fulminante*, 499 U.S. 279, 296 (1991)). Appellant's confession, along with other evidence adduced at trial, was overwhelming evidence of his guilt. *See Motilla*, 78 S.W.3d at 357; *see also Crayton v. State*, 485 S.W.3d 488, 506–07 (Tex. App.—Texarkana 2016, no pet.).

### 2. *Harm Analysis on Punishment*

After the jury found Appellant guilty of aggravated assault with a deadly weapon and burglary of a habitation, the State, in the punishment phase for both

cases, alleged two enhancements for his prior felony convictions: (1) robbery and (2) organized criminal activity for delivery of a controlled substance of more than 400 grams. Appellant's punishment range for the offenses was a minimum term of confinement for twenty-five years with the maximum being ninety-nine years or life in prison. PENAL § 12.42(d). The State introduced evidence of the felony convictions for both of the enhancement allegations. The State also introduced evidence of an additional felony conviction for unlawful possession of a firearm. Appellant received sentences of confinement of five, two, and twenty-five years, respectively, for the robbery, unlawful possession, and organized criminal activity convictions.

In addition to his adult criminal history, Appellant, who was twenty-nine years old at the time of trial, had an extensive juvenile criminal history. Appellant's criminal career started when, at the age of ten years old, he was charged with assault and unlawful carrying of a weapon in a school. Over the next several years, he was charged with truancy, making a terroristic threat, assault, criminal trespass, injury to a child, theft, burglary, and assault with a deadly weapon—with charges in Texas and Kansas. The injury-to-a-child charge involved him binding his sister to a chair and hitting her with his fists. Of these charges, two resulted in juvenile adjudications, and two resulted in modification of Appellant's juvenile probation. Appellant's juvenile probation was ultimately revoked. He spent time at a boot camp as well as two Texas Youth Commission detention facilities. In 2002, when Appellant was sixteen years old, he was charged with aggravated robbery and unauthorized use of a motor vehicle, and at that time, he was certified as an adult.

In this case, Appellant violently attacked his former girlfriend; Appellant was convicted after he admitted that he attacked her. After his arrest in this case, and while being transported to the county jail, Appellant escaped from his handcuffs and

used them, along with his feet, to damage two of the transporting car's windows. While incarcerated in the county jail, Appellant had altercations with jail staff and had several "use of force[]" incidents. He also failed to follow the rules and had been caught with a weapon and other contraband. In another incident, Appellant admitted that he held down an inmate while others bit, stripped, and attempted to rape the inmate. In prison, Appellant failed to follow rules on possession of contraband. After his release on parole in 2012, Appellant was back in jail nine months later in Dallas on charges of another assault and drug possession.

The State also introduced testimony about Appellant's tattoos, but none had any specific gang affiliation. However, the writings that he made on jail cell walls reflected an association with "West Texas Tango," an affiliate of a statewide gang, "Tango Blast." This affiliation was also demonstrated in hand signals that Appellant made while he posed with friends in a photograph. Appellant admitted that, when he was released on parole in 2005, he sold methamphetamine; in his words, "[i]t was rolling everywhere in town . . . [i]f you need meth, just call me, and I will bring it." Appellant said he had worked at legitimate jobs but not for long and only because he was "fresh out of prison." He was evasive when asked about his gang affiliations, but he admitted that he illegally carried a gun in Fort Worth and that he has used illegal drugs. Appellant testified that he was remorseful about his assault of Mascorro and that, in the future, he would not look for her. But Mascorro recounted how Appellant had threatened to kill her once before and had searched for her after he got out of jail.

The jury had the victim's testimony, other witnesses' testimony, Appellant's extensive juvenile and adult criminal record, and his own testimony before it when it assessed punishment. After a review of the record, we hold beyond a reasonable doubt that any error from Appellant being shackled during trial was harmless

7

because it did not contribute to his conviction or his punishment. *See* TEX. R. APP. P. 44.2(a); *see also Crayton*, 485 S.W.3d at 506–07; *Wynn*, 219 S.W.3d at 60. We overrule Appellant's issues in each appeal.

III. <em>This Court's Ruling</em>

We affirm the judgments of the trial court.


MIKE WILLSON

JUSTICE

July 14, 2016

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.