Charone **WYNN**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 01–05–00767–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Nov. 9, 2006.

Tony Aninao, Houston, for Appellant.

Charles A. Rosenthal, Jr., District Attorney–Harris County, Carmen C. Mitchell, Assistant District Attorney, Houston, for Appellee.

Panel consists of Justices TAFT, KEYES, and HANKS.

## OPINION

EVELYN V. KEYES, Justice.

A jury found appellant, Charone Wynn, guilty of aggravated robbery, and, having found true two enhancement paragraphs alleging prior convictions for aggravated assault and possession of a controlled sub-

stance, the trial court sentenced him to life in prison. In four points of error, appellant contends that the trial court violated his due process rights under the constitutions of the United States and Texas by (1) ordering him to be shackled for the duration of his trial and (2) assessing an excessive prison sentence.

We affirm.

## BACKGROUND

On January 5, 2005, at approximately 4:00 a.m., appellant entered a Denny's restaurant near Interstate 45 and Little York Road. He was greeted by the complainant, Tria Rhone, who worked as the restaurant's night manager. Rhone led appellant to a table, where he ordered a meal. After he finished eating, appellant walked into the restaurant's kitchen, placed a handgun to Rhone's head, and demanded money from the safe. Rhone complied with appellant's demands, opening the safe and handing its contents to appellant. Dissatisfied with the amount of money inside the safe, appellant pressed the gun to Rhone's head stating, "This is all you got? You're going to die for this."

Aware that a robbery was in progress, waitress Evelin Pedraza warned the restaurant's patrons and instructed them to leave. In the ensuing commotion, patron Lorenzo Yerba ran into the restaurant's kitchen area, where he witnessed appellant holding a handgun to Rhone's head. Yerba turned to head for the front of the restaurant. When Yerba reentered the dining area, appellant was standing near the cash register, which he ordered Yerba to open. After Yerba told him that he did not work at the restaurant, appellant demanded Yerba's wallet, which Yerba gave to him. Appellant then left the restaurant

through the front door, hopped on a bicycle, and rode toward a Houston Metro Park & Ride ("Park & Ride").

Called by a patron using Pedraza's cell phone, the police arrived within minutes of appellant's departure. Rhone and other customers provided the police with a description of appellant and told them that he had biked toward the nearby Park & Ride. Houston Police Officer B. Chebret received a radio dispatch that appellant, armed with a gun, was in the Park & Ride. Officer Chebret drove to the Park & Ride's north entrance, where he saw appellant riding his bicycle. After appellant ignored Officer Chebret's commands to stop, Officer Chebret used his taser to subdue him after a brief chase.

Captured approximately ten minutes after the robbery, appellant was returned to the restaurant by Officer Chebret. There, appellant was positively identified by Rhone and Yerba, both of whom also positively identified him in open court.[1] The money from the robbery, as well as Yerba's wallet and a handgun, were recovered from appellant, who was taken into custody and indicted for aggravated robbery.

At a pretrial hearing on August 1, 2005, the State confirmed that it was willing to offer appellant a sentence of 28 years' confinement, three years more than the minimum sentence if appellant were convicted. The State indicated that it would ask for a sentence of not less than 50 years' confinement if appellant went to trial and was found guilty. Appellant rejected the State's offer and informed the trial court that he was not satisfied with his court-appointed counsel. Appellant then stated that he preferred to wear his orange jail suit to trial, rather than the

---

1. In addition, the restaurant's surveillance camera recorded an image of appellant holding a handgun to Rhone's head. This image was entered into evidence during appellant's trial.

civilian clothes provided by his aunt. Despite admonitions from the trial court and his counsel regarding the prejudicial effect of appearing before the jury in a jail suit, appellant insisted that he would not wear civilian clothes to trial. At the conclusion of the hearing, and immediately following the discussion involving appellant's choice of attire for trial, the trial court stated:

> Let the record reflect that due to the Court's observation of [appellant's] demeanor in the courtroom, the Court is very concerned about his behavior during trial and I'm going to order that he be leg-ironed and handcuffed at all times while in the courtroom during trial. You're going to be handcuffed during trial. Keep your hands beneath the table so the jury will not see them.

Appellant's counsel objected, stating that shackling appellant for trial would be prejudicial and would interfere with appellant's ability to communicate with his attorney during the trial. The trial court overruled the objection, noting that the shackles would not be visible to the jury and that appellant would be free to communicate verbally with his attorney.

Voir dire commenced the next day, August 2, 2005. Appellant, appearing in his orange jail suit, held his shackled hands in plain view of the venire members, despite the trial court's prior instructions not to do so. Because appellant's actions openly exposed his shackles to the venire members, the trial court asked the prospective jurors whether knowing that appellant was shackled would prevent them from rendering a fair verdict. One venire member, who was subsequently dismissed, indicated that he would be unable to presume appellant innocent in view of his being shackled. Following the selection of the jury, to which appellant raised no objections, the following exchange occurred, outside the presence of the jury:

> COURT: I want the record to reflect that I had a lengthy conversation with Mr. Wynn yesterday on the record.[2] The tenor of his voice in the courtroom was uncooperative and combative. When I showed up this morning for work, my bailiff, Gina Grahmann, and my other bailiff, John Wheeler, reported to me that they thought that—well, that Mr. Wynn was going—was non-responsive, would not talk with them, would not respond to any questions they asked of him, like whether or not he was going to want to get dressed out. Their opinion was that he was not going to communicate and appeared to them to be combative. They informed me that they had called downstairs and asked for an extra deputy to be assigned to this court, which the Sheriff's Department did so. We'll have three deputies during this trial. They asked me for a delay beginning the trial until they had the opportunity to clear the holdover of all the other male inmates before they brought Mr. Wynn out for trial. During the lunch hour, Deputy Wheeler informed me that he took Mr. Wynn his lunch and when he asked Mr. Wynn if he wanted some lunch, he told Deputy Wheeler just to throw it on the floor, in a very combative tone. Mr. Wynn certainly knew yesterday I was going to require him to be handcuffed during trial. He certainly was aware yesterday he was going to be allowed to sit in a manner where the handcuffs would not in any way, shape, or form be visible to the jury. And when Mr. Wynn was brought out before the jury, he was

---

**2.** Presumably, the trial court is referring to the August 1, 2005 pretrial hearing where appellant insisted on wearing his orange jail suit to trial.

brought out this morning before the jury was brought in. There was no way, because of the way the tables are positioned, that any of the jurors could be aware he was leg-ironed. And from the second he sat down, Mr. Wynn chose to sit down in a manner which allowed the handcuffs to be visible by the jury. I've been through many jury trials where I have had defendants handcuffed during jury selection and during jury trial. I've never had a juror observe that the defendant was handcuffed, so there's no doubt in my mind that the manner in which Mr. Wynn was seated was a conscious effort on his part to display the handcuffs to the jury in a very defiant posture. Likewise, when he was brought out of the holdover cell after the lunch break, Mr. Wynn was observed by the bailiff to be clinching his fists, holding them up before the jury in a very defiant and combative manner. Because of the seriousness of the allegation in this case and the range of punishment, there is no doubt in my mind Mr. Wynn represents the highest, the highest security risk to the participants during trial, completely justifying my order to have him handcuffed, and he will remain handcuffed for the duration of the trial. Mr. Wynn, anything you want to say about that?

APPELLANT: (No verbal response).

COURT: Let the record reflect, once again, Mr. Wynn has chosen to stand mute. All right.

APPELLANT'S COUNSEL: Judge, just a couple things in response to that Judge. First, as far as to secure a future appellate record, we did discuss this matter on the record yesterday in a pretrial hearing on the 1st of August. I would request that if need be that be made part of this record, whatever discussions we had yesterday on the record regarding this and any other pretrial matters, that that be attached to this record. Judge, I would reiterate again that I have been provided a case, I think it's called *Deck v. Missouri*. I think it's a 2005 case. I think, that the U.S. Supreme Court had just recently heard regarding this issue of shackling a defendant. I think that was even a capital murder case, I believe, that the Supreme Court, I think, granted out of Missouri where, I guess, that the defendant had been shackled, I guess, during the jury penalty phase of the trial, Judge. I think they granted on that case and found it was unconstitutional for a defendant to be shackled during his trial, Judge. And at this point, I believe Mr. Wynn has suffered the most egregious and the most severe type of prejudice he can have by having him shackled and restrained in leg irons during trial. I think that's what this case, I think, the *Deck* case that the Supreme court has recently heard this spring, and we would move for a mistrial at this point, Judge, because Mr. Wynn, I think, has an absolute right to go to trial without having the leg irons and the shackles, Judge, during this case. I think there's a strong presumption of guilt by having him shackled and leg-ironed. I don't believe that this jury can render a fair and impartial verdict based upon—just based upon that, basically, Judge, the fact that he's shackled and leg-ironed and handcuffed.

COURT: Denied.

Appellant remained shackled throughout his trial. The jury found him guilty, and the trial court assessed his punishment at confinement for life. This appeal followed.

## DISCUSSION

### Shackling of Appellant During Trial

 In his first and second points of error, appellant contends that the trial court violated his due process rights under the United States and Texas Constitutions by requiring him to wear shackles throughout his trial. As a preliminary matter, we note that appellate courts review a trial court's decision to shackle a defendant during trial in two stages. First, an appellate court must determine whether the trial court abused its discretion in ordering the defendant to be shackled. *Long v. State*, 823 S.W.2d 259, 282 (Tex.Crim.App.1991). Second, if it finds that the trial court did abuse its discretion, the appellate court must determine whether the defendant suffered harm as a result. *Id.*

The Fourteenth Amendment of the United States Constitution and Article I, Section 19 of the Texas Constitution guarantee criminal defendants the right to a fair trial. *See Estelle v. Williams*, 425 U.S. 501, 503, 96 S.Ct. 1691, 1692, 48 L.Ed.2d 126 (1976); *Long*, 823 S.W.2d at 282. Three constituent elements of this guarantee are directly implicated by the shackling of a criminal defendant during trial proceedings. *See Deck v. Missouri*, 544 U.S. 622, 630–31, 125 S.Ct. 2007, 2013, 161 L.Ed.2d 953 (2005). First, "the criminal process presumes that the defendant is innocent until proven guilty." *Id.* A defendant who is visibly shackled does not have the benefit of this bedrock presumption, and thus his right to a fair trial is fundamentally compromised. *Id.; Cooks v. State*, 844 S.W.2d 697, 722 (Tex.Crim.App. 1992). Second, "the Constitution, in order to help the accused secure a meaningful defense, provides him with a right to counsel." *Deck*, 544 U.S. at 631, 125 S.Ct. at 2013. The use of shackles may undermine this right by impeding a defendant's ability to effectively communicate with his attorney. *Id.* Third, "[t]he routine use of shackles in the presence of juries" compromises "[t]he courtroom's formal dignity, which includes the respectful treatment of defendants, reflects the importance of the matter at issue, guilt or innocence, and the gravity with which Americans consider any deprivation of an individual's liberty through criminal punishment." *Id.*

 For the reasons stated above, "[t]he law has long forbidden routine use of visible shackles during the guilt phase" of a criminal defendant's trial. *Id.* at 626, 125 S.Ct. at 2010; *Long*, 823 S.W.2d at 282. Despite this general rule, courts recognize that it may be necessary for certain defendants to be restrained in exceptional circumstances. *See Deck*, 544 U.S. at 629, 125 S.Ct. at 2012; *Long*, 823 S.W.2d at 282. Such circumstances may arise, for instance, when a defendant has demonstrated a propensity to escape or has threatened or assaulted courtroom personnel, thereby implicating an essential state interest, namely, courtroom security. *See Deck*, 544 U.S. at 632, 125 S.Ct. at 2014; *Long*, 823 S.W.2d at 282. Prior to the use of shackles, however, a trial court must make a specific finding that they are necessary for reasons particular to a given case. *See Deck*, 544 U.S. at 627, 125 S.Ct. at 2011 ("[T]rial courts may not shackle defendants routinely, but only if there is a particular reason to do so."); *Long*, 823 S.W.2d at 283; *see also Jacobs v. State*, 787 S.W.2d 397, 407 (Tex.Crim.App.1990).

 The use of restraints, such as shackles, cannot be justified based on a general appeal to the need for courtroom security or simple reference to the severity of the charged offense. *See Long*, 823 S.W.2d at 283; *Jacobs*, 787 S.W.2d at 407. Rather, a trial court must state with particularity its reasons for shackling a defen-

dant. *See Long,* 823 S.W.2d at 283. Such determinations are reviewed under an abuse of discretion standard. *Id.* at 282. While mindful of preserving a trial court's discretion to determine whether restraints are necessary in a given case, "a decision to apply ... shackles to [a] defendant 'must be subjected to close judicial scrutiny to determine if there was an essential state interest furthered by compelling a defendant to wear shackles.'" *United States v. Durham,* 287 F.3d 1297, 1304 (11th Cir.2002) (quoting *Elledge v. Dugger,* 823 F.2d 1439, 1451 (11th Cir.1987) (per curiam), *withdrawn in part,* 833 F.2d 250 (11th Cir.1987)). In determining whether the trial court abused its discretion in requiring the defendant to be tried with handcuffs, each case must be evaluated on its own facts as reflected by the appellate record. *Culverhouse v. State,* 755 S.W.2d 856, 860 (Tex.Crim.App.1988).

Here, the trial court noted at the August 1 pretrial hearing that it was concerned with appellant's demeanor and was, therefore, ordering appellant to be shackled for the duration of his trial. The trial court also noted that the deputies assigned to appellant were sufficiently concerned with his uncooperative behavior to request the assistance of another deputy during appellant's trial, a request that was granted by the Sheriff's office. Despite having access to civilian clothes, appellant elected to wear an orange jail suit to trial. Appellant also defied the trial court's admonition by displaying his handcuffs to the jury. Appellant also exhibited combative behavior by instructing the deputy to throw his food on the floor, holding up his clenched fists before the jury, and refusing to cooperate with his counsel and the deputies.

Following voir dire, the trial court stated its reasons for shackling appellant on the record. According to the trial court,

appellant (1) exhibited a generally hostile demeanor; (2) acted combatively toward courtroom deputies; (3) displayed clinched fists to the jurors in a manner the trial court interpreted to be threatening; and (4) purposefully defied the court's instructions by revealing his shackles to the jurors. When given an opportunity either to deny or qualify the trial court's enumeration of its concerns, appellant chose to stand mute. Appellant's counsel did object to his client being shackled by appealing to recent United States Supreme Court precedent, but counsel did not make any statements rebutting the trial court's specific concerns about appellant. Both the United States Supreme Court and the Texas Court of Criminal Appeals have held that legitimate concerns over courtroom security will justify the shackling of a criminal defendant for trial. *See Deck,* 544 U.S. at 632, 125 S.Ct. at 2014; *Long,* 823 S.W.2d at 282. We conclude that the trial court acted within its discretion when it ordered appellant to be shackled for the duration of his trial.

Moreover, even if we were to hold that the trial court erred in shackling appellant, we would hold that appellant suffered no harm from the trial court's error. When it concludes that shackling was within a trial court's discretion, an appellate court must determine whether the shackling constituted harmful error. *See* Tex.R.App. P. 44.2(a). Because the use of shackles implicates constitutional rights,[3] an appellate court must "reverse a judgment of conviction or punishment unless [it] determines beyond a reasonable doubt that the [shackling] did not contribute to the conviction or punishment." *See id.* Shackling has principally been held to be harmful error when the shackles are detectable to the jurors or when the use of

---

**3.** *See Deck,* 544 U.S. at 630–31, 125 S.Ct. at 2013.

restraints unduly restricts a defendant's ability to communicate with counsel. *See Deck*, 544 U.S. at 630–31, 125 S.Ct. at 2013. According to the Court of Criminal Appeals, all efforts should be undertaken to prevent the jury from seeing the defendant in shackles, except when there has been a showing of exceptional circumstances or a manifest need for such restraint. *Long*, 823 S.W.2d at 282.

 Here, the trial court noted on more than one occasion that appellant's shackles would not be visible to the jurors if appellant held his hands below the defendant's table. Appellant neither challenged this assessment nor asserted that keeping his hands below the table was impracticable. Rather, appellant chose to reveal his shackles to the jury. Thus, although the trial court undertook measures to ensure that the jurors did not see appellant's shackles, appellant nevertheless invited harm upon himself. It is a well-settled principle of law that a criminal defendant cannot invite error and then complain of it on appeal. *See Prystash v. State*, 3 S.W.3d 522, 532 (Tex.Crim.App. 1999), *cert. denied*, 529 U.S. 1102, 120 S.Ct. 1840, 146 L.Ed.2d 782 (2000). Therefore, because the record reflects that appellant, in addition to wearing an orange jail suit at trial when civilian clothes were available, chose to display his shackles to the jurors, appellant cannot argue on appeal that he was harmed as a result of being shackled.

We overrule appellant's first and second points of error.

*Cruel and Unusual Punishment and Due Process*

In his third and fourth points of error, appellant argues that the sentence for his third felony offense constituted cruel and unusual punishment under the United States Constitution and a violation of his due process rights under the Texas Constitution. Specifically, appellant con-

tends that the trial court's assessment of punishment of life imprisonment was grossly disproportionate to his crime of aggravated robbery, even when enhanced by two prior felony convictions.

The record does not indicate that appellant objected at trial to the sentence of life imprisonment. Nor did he raise these arguments in a motion for new trial. Failing to object in the trial court to an alleged disproportionate sentence waives any error. *Solis v. State*, 945 S.W.2d 300, 301 (Tex.App.-Houston [1st Dist.] 1997, pet. ref'd); *Chapman v. State*, 859 S.W.2d 509, 515 (Tex.App.-Houston [1st Dist.] 1993), *rev'd on other grounds*, 921 S.W.2d 694 (Tex.Crim.App.1996). Therefore, his arguments are not preserved for review. *See* Tex.R.App. P. 33.1 (a).

We overrule appellant's third and fourth points of error.

**CONCLUSION**

We affirm the judgment of the trial court.