TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-06-00646-CR






Robert Troy McClure, Appellant


v.


The State of Texas, Appellee






FROM THE DISTRICT COURT OF COMAL COUNTY, 22ND JUDICIAL DISTRICT

NO. CR2005-234, HONORABLE JACK H. ROBISON, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N


 A jury convicted appellant Robert Troy McClure of aggravated robbery. See
Tex. Penal Code Ann. § 29.03 (West 2003). He was sentenced to forty-five years in prison and
assessed a $10,000 fine. In eight issues, McClure argues that the evidence was legally and factually
insufficient to prove robbery, that the trial court improperly admitted certain expert testimony, that
he received ineffective assistance of counsel, and that his due process rights were violated. We
affirm the district court's judgment.

 On January 2, 2005, McClure and Kenneth Michael Burks, who lived together at the
time of the incident, got into an argument that led to a physical altercation. McClure cut Burks on
his neck with a kitchen knife. Burks left to get help, and McClure fled in Burks's car. About one
year later, McClure was apprehended in Alaska and extradited to Comal County.

 In a two-count indictment, the State charged McClure with one count of aggravated
robbery, see id., and one count of aggravated assault, see id. § 22.02(a)(1), (2) (West Supp. 2008). 
At trial, McClure claimed self-defense, arguing that Burks attacked him first with a pistol. During
trial, the State abandoned the charge of aggravated assault with a deadly weapon and proceeded on
the aggravated robbery count only. The jury was also charged on the lesser-included offense of
aggravated assault with a deadly weapon. The State also sought an affirmative finding on the issue
of the use of a deadly weapon. The jury found that McClure had used or exhibited a deadly weapon
during the commission of the offense and convicted McClure of aggravated robbery. The jury
sentenced McClure to forty-five years in prison and assessed a $10,000 fine. The trial court entered
judgment on the verdict.

 In his first two issues, McClure argues that the evidence was legally and factually
insufficient to support the jury's finding on aggravated robbery. McClure contends that the evidence
does not show a clear nexus between the assault and the appropriation of the property.

 In a legal-sufficiency review, we consider whether a rational trier of fact could
have found the essential elements of the offense beyond a reasonable doubt. Vodochodsky v. State,
158 S.W.3d 502, 509 (Tex. Crim. App. 2005). We review all the evidence in the light most
favorable to the verdict and assume that the trier of fact resolved conflicts in the testimony, weighed
the evidence, and drew reasonable inferences in a manner that supports the verdict. See Rollerson
v. State, 227 S.W.3d 718, 724 (Tex. Crim. App. 2007); Shams v. State, 195 S.W.3d 346, 347
(Tex. App.--Austin 2006, pet. ref'd) (citing Griffin v. State, 614 S.W.2d 155, 159 (Tex. Crim. App.
1981)).

 In a factual-sufficiency review, the evidence is reviewed in a neutral light. Roberts
v. State, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007). Evidence is factually insufficient when
(1) the evidence supporting the verdict is so weak that the verdict seems clearly wrong
and manifestly unjust, or (2) the supporting evidence is outweighed by the great weight and
preponderance of the contrary evidence so as to render the verdict clearly wrong and manifestly
unjust. Id. An appellate court must be appropriately deferential to the jury's verdict, in order to
avoid substituting its own judgment for that of the fact-finder. Vasquez v. State, 67 S.W.3d 229, 236
(Tex. Crim. App. 2002).

 We must avoid substituting our judgment for that of the fact-finder, and we should
not substantially intrude upon the fact-finder's role as the sole judge of the weight and credibility
given to witness testimony. Jones v. State, 944 S.W.2d 642, 648 (Tex. Crim. App. 1996). The jury
is the sole judge of the weight and credibility of witness testimony. Barnes v. State, 62 S.W.3d 288,
298 (Tex. App.--Austin 2001, pet. ref'd). The jury may accept or reject all or any of the evidence
presented by either side, may draw reasonable inferences from the evidence, and must reconcile any
evidentiary conflicts. Id. We determine the sufficiency of the evidence by viewing the cumulative
effect of all of the evidence, not each fact in isolation. Id. at 297.

 As set out in the penal code and the court's charge:


A person commits the offense of aggravated robbery, if he commits the offense of
robbery as hereinafter defined, and he:


(1) causes serious bodily injury to another; or 


(2) uses or exhibits a deadly weapon.


A person commits the offense of robbery if in the course of committing theft as
hereinafter defined and with intent to obtain or maintain control of the property, he:


(1) intentionally, knowingly, or recklessly causes bodily injury to another; or 


(2) intentionally or knowingly threatens or places another in fear of imminent
bodily injury or death. 


A person commits theft if he unlawfully appropriates property with intent to deprive
the owner of property.


Appropriation of property is unlawful if it is without the owner's effective consent.



See Tex. Penal Code Ann. §§ 29.02, .03 (West 2003), § 31.03 (West Supp. 2008). To find McClure
guilty of aggravated robbery, the jury had to find that the injuries sustained by Burks were
inflicted by McClure in the course of the theft of Burks's property. See id.; see also Cooper v. State,
67 S.W.3d 221, 223 (Tex. Crim. App. 2002) (requiring a nexus between the theft and the assault for
conviction of robbery).

 Burks testified that prior to his confrontation with McClure on the night of the
incident, he suspected McClure of stealing his car and two of his credit cards. He had contacted his
credit card companies, determined that there had been unauthorized charges made on one of his cards
that evening, and canceled that card. When McClure returned to the house, a dispute arose over
McClure's use of Burks's car and credit cards. According to Burks, McClure understood that he no
longer had permission to use his car or credit cards. Burks told McClure, "You need to go," and
"I've got to get out of here," and walked toward his room. Burks went to his room, and while he was
putting on his shoes, McClure approached him from behind and cut his throat with a kitchen knife. 
Burks then ran to a neighbor's house for help. McClure fled with Burks's car and credit card. The
evidence showed that McClure used the credit card to get cash the next day. McClure was
apprehended in Alaska a year later and extradited to Comal County.

 McClure also testified. According to McClure, when he arrived home that evening,
Burks was "in a rage" and eventually pulled a gun on him--pointing the gun at his chest. In an
attempt to defend himself, McClure claimed he grabbed a kitchen knife. In the course of the fight,
McClure testified that he swung the knife to defend himself and may have cut Burks in the process.

 In situations where the evidence lends itself to multiple interpretations, it is the jury's
duty to weigh the evidence and to adopt the interpretation it deems most plausible. Based on its
verdict, the jury chose to believe Burks's version of events and to infer that--faced with Burks's
revoking McClure's use of his car and credit cards--McClure had assaulted Burks for the purpose
of appropriating Burks's property. This inference is supported by additional evidence, including the
location of the only gun in the house, (1) the lack of any hospital records indicating treatment for what
McClure alleged was a broken nose resulting from their fight, the fact that McClure fled with
Burks's car and credit card, and credit card records showing McClure's later use of the stolen card
to get cash despite his assertion that such transaction occurred prior to the fight. It is for the jury to
decide which of a number of reasonable interpretations to give conflicting testimony as well as how
much weight to give each witness's testimony. Jones, 944 S.W.2d at 648; Barnes, 62 S.W.3d at 298. 
As we may neither substitute our own judgment for that of the fact-finder nor re-weigh the evidence,
we conclude that the evidence is factually sufficient to support the jury's verdict. Id. Likewise,
viewing all the evidence in the light most favorable to the verdict and assuming that the jury resolved
conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that
supports the verdict, we conclude that the evidence is legally sufficient to support the jury's verdict. 
See Rollerson, 227 S.W.3d at 724; Shams, 195 S.W.3d at 347. Accordingly, we overrule McClure's
first two issues.

 In his third issue, McClure argues that the trial court improperly admitted certain
testimony of Dr. Neil McMullin, the State's medical expert. According to McClure, Dr. McMullin's
testimony as to what direction the wounds had been inflicted was forensic testimony, not medical
testimony, and should not have been admitted as unqualified opinion testimony pursuant to
Texas Rule of Evidence 702. The State contends that Dr. McMullin's testimony was a medical
opinion to which he was qualified to testify.

 We review a trial court's decision on the admission or exclusion of evidence for
an abuse of discretion. Ellison v. State, 201 S.W.3d 714, 723 (Tex. Crim. App. 2006). Expert
testimony is admissible where specialized knowledge will assist the trier of fact in understanding the
evidence or determining a fact in issue. Tex. R. Evid. 702; Schutz v. State, 957 S.W.2d 52, 59
(Tex. Crim. App. 1997).

 The testimony at issue is Dr. McMullin's statement and related testimony that, in his
medical opinion, it was unlikely that Burks's wound was caused by his falling forward onto a knife
and more likely that the injury was inflicted by someone behind Burks. At trial, the parties disputed
how Burks sustained his injury--whether by the intentional act of McClure from behind Burks, or
simply as an accidental result of their struggle with the injury occurring from the front or side of
Burks. The district court did not abuse its discretion in finding that Dr. McMullin was fully qualified
to render his expert medical opinion as to how he believed the wound was inflicted. Rule 702 does
not require that Dr. McMullin have had special forensic training to render his medical opinion on
the direction of the cut. Even assuming that such testimony was erroneously admitted, however, a
review of the record shows that its admission did not affect McClure's substantial rights as it had no
substantial or injurious effect on the verdict. See Tex. R. App. P. 44.2(b); King v. State, 953 S.W.2d
266, 271 (Tex. Crim. App. 1997).

 In conducting a harm analysis as to the erroneous admission of expert testimony, we
consider everything in the record, including the evidence admitted, the jury instructions, the State's
theory, defensive theories, closing arguments, and voir dire. Motilla v. State, 78 S.W.3d 352, 356
(Tex. Crim. App. 2002). Important factors are "the nature of the evidence supporting the verdict,
the character of the alleged error and how it might be considered in connection with other evidence
in the case." Id. at 355. We also consider whether the State emphasized the error, whether the
erroneously admitted evidence was cumulative, and whether it was elicited from an expert. Id. at
356. If the error had only a slight influence on the verdict, the error is harmless. Johnson v. State,
967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

 A review of the record shows no emphasis by the State on the testimony in question. 
In addition, other testimony and evidence indicated that the injury had been intentionally inflicted. 
The jury heard testimony from Rebecca Sanchez, Burks's next door neighbor, that on the evening
of January 2, 2005, she went to her front door to investigate a "thump" and found Burks leaning
against the wall on her front doorstep and holding his throat, which was bleeding. According to
Sanchez, Burks asked her to help him and mentioned that he and his roommate had been drinking
and got into a fight over his car. He asked Sanchez whether his car was there, and Sanchez reported
that the car was gone. When Sanchez asked Burks who had cut him, he told her that it was "Robin,"
who was his roommate. (2)

 Officer Jermyn Baker, who was dispatched to the scene of the incident on January 2,
2005, testified that Burks told him that Robbie Delphine had cut him. After determining that Burks's
residence was empty, Baker surveyed the scene, finding "blood all over the tile, on the wall right
inside and on the door. Looking more in the residence, there was some in the--the dining room area,
next to the table where the knife was found." Baker also found blood throughout the house. In
addition, Baker


 found paperwork that had "Delphine's Restaurant" or "Delphine's Café" on it, and
in there I found a name of Robert Delphine. With that paperwork, I also found--or
some other paperwork in there, I found a name of Robert McClure, Robert L.
McClure, on it and tied those two names together.



Baker, along with other officers who had been present at the scene, testified that their investigation
revealed that some sort of disturbance had taken place in the house.

 Further testimony indicated that McClure's fingerprints were on the knife that had
been used to cut Burks. When presented with a lineup, Burks immediately and without hesitation
identified McClure as the perpetrator. Burks testified at trial that McClure cut his throat from behind
as he was putting on his shoes following his encounter with McClure. In addition, although McClure
claimed at trial that he had been defending himself against Burks's beating him with a handgun, the
only firearm found in the house during the investigation was a pistol located in a zipper case inside
a closed drawer and underneath some clothing.

 Even absent Dr. McMullin's testimony, reviewing the entire record, the evidence was
sufficient for the jury to determine that Burks sustained his injury as a result of McClure's intentional
acts, not as an accidental result of a struggle. See Jones, 944 S.W.2d at 648; Barnes, 62 S.W.3d at
298. Therefore, even assuming that such testimony was erroneously admitted, its admission was
harmless. See Tex. R. App. P. 44.2(b); King v. State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). 
Accordingly, we overrule McClure's third point of error.

 In his fourth, fifth, sixth, and seventh issues, McClure argues that he received
ineffective assistance of counsel. He points to defense counsel's eliciting otherwise inadmissible
details as to a prior deferred adjudication for aggravated assault with a deadly weapon and defense
counsel's failure to object to allegedly improper impeachment testimony as to McClure's assaultive
propensity and prior assault convictions, as well as to an allegedly improper closing argument.

 We evaluate claims of ineffective assistance of counsel against the standard set
forth in Strickland v. Washington. See 466 U.S. 668, 687 (1984); Hernandez v. State, 988 S.W.2d
770, 774 (Tex. Crim. App. 1999). In deciding a claim of ineffective assistance of counsel, we
must determine whether an attorney's performance was deficient, and if so, whether that deficiency
prejudiced the defense. Strickland, 466 U.S. at 687; Thompson v. State, 9 S.W.3d 808, 812
(Tex. Crim. App. 1999). An attorney's performance is deficient if it falls below an objective
standard of reasonableness. Strickland, 466 U.S. at 688; Thompson, 9 S.W.3d at 812. Deficient
performance is prejudicial when, but for the attorney's unprofessional conduct, there is a reasonable
probability that the outcome of the proceeding would have been different. Strickland, 466 U.S. at
694; Thompson, 9 S.W.3d at 812. A reasonable probability is a probability sufficient to undermine
confidence in the outcome. Strickland, 466 U.S. at 694; Thompson, 9 S.W.3d at 812. In determining
whether an attorney's performance was deficient, we apply a strong presumption that the attorney's
conduct was within the range of reasonable professional assistance. Thompson, 9 S.W.3d at 814. 
We review the effectiveness of counsel in light of the totality of the representation and the
circumstances of each case. Id. at 813.

 In most cases, an undeveloped record on direct appeal is insufficient to satisfy
the dual prongs of Strickland because the reasonableness of counsel's decisions often involves facts
not appearing in the appellate record. Rylander v. State, 101 S.W.3d 107, 110 (Tex. Crim. App.
2003). Without evidence of the strategy and methods involved concerning counsel's actions at trial,
an appellate court should presume a sound trial strategy. See Thompson, 9 S.W.3d at 814. If no
reasonable trial strategy could justify trial counsel's conduct, counsel's performance falls below an
objective standard of reasonableness as a matter of law, regardless of whether the record adequately
reflects trial counsel's subjective reasons for acting as he did. Andrews, 159 S.W.3d at 102.

 McClure argues that defense counsel's eliciting otherwise inadmissible details as to
a prior deferred adjudication for aggravated assault with a deadly weapon amounted to deficient
performance. McClure does not challenge defense counsel's decision to inform the jury of the
conviction itself, recognizing that "the decision to inform the jury may have had a strategic basis,
particularly in explaining why Appellant fled after the altercation with the complainant and did
not contact police afterward." Rather, McClure challenges defense counsel's elicitation of the details
of the conviction.

 Eliciting such details could have been a part of defense counsel's reasonable trial
strategy. Prior convictions may be admissible to rebut a defensive theory. See Tex. R. Evid. 404(b). 
Here, McClure raised the issue of self-defense, and it was likely that the details of the offense would
have been admitted to rebut this theory, as in the previous instance of assault, McClure had claimed
self-defense but had ultimately pled guilty. In eliciting details of the offense, defense counsel gave
McClure the opportunity to explain his version of the prior offense in the best light possible before
being cross-examined by the prosecutor. McClure explained that he had not been the aggressor
in that situation, but had been acting in self-defense. Without a developed record from which to
determine defense counsel's strategy, we cannot conclude that his elicitation of details from McClure
about the previous instance of assault did not relate to some reasonable trial strategy. See Ortiz
v. State, 93 S.W.3d 79, 88-89 (Tex. Crim. App. 2002) ("If counsel's reasons for his conduct do not
appear in the record and there is at least the possibility that the conduct could have been legitimate
trial strategy, we will defer to counsel's decisions and deny relief on an ineffective assistance claim
on direct appeal.").

 McClure also points to defense counsel's failure to object to allegedly improper
impeachment testimony as to McClure's history of assault. The exchange at issue is the prosecutor's
question: "You have an assaultive history, do you not, Mr. McClure?" along with McClure's
response: "I do. I protect myself." At this point in trial, the jury already knew that McClure
had previous convictions and was on deferred adjudication for aggravated assault. In light of this
testimony, defense counsel may have determined it best to allow McClure to confront and directly
respond to the likely perception of the jurors at this point--that McClure did, indeed, have an
assaultive history. Defense counsel may have thought it best to allow McClure to offer an
explanation, which McClure did. As acknowledged by McClure in his briefing, "the record does not
demonstrate trial counsel's reasoning for his failure to object." Again, without a developed record
from which to determine defense counsel's strategy, we cannot conclude that his failure to object did
not relate to some reasonable trial strategy. See id.

 McClure also points to defense counsel's failure to object to the admission of prior
assault convictions. Prior convictions may be admissible to rebut a defensive theory. See Tex. R.
Evid. 404(b). In this case, the defense's theory was that McClure cut Burks while acting in self-defense. Although the State did not demonstrate under which theory it sought to rebut McClure's
claim of self-defense, the intent could have been to have the testimony admitted to show that
McClure has repeatedly responded to perceived aggression with the use of a disproportionate or
unreasonable amount of force. It is also possible that defense counsel or McClure welcomed
the admission of the prior convictions for the purpose of negating intent--e.g., that McClure had
been forced to defend himself in those situations just as he had in his confrontation with McClure. 
Again, without a developed record from which to determine defense counsel's strategy, we cannot
conclude that his failure to object did not relate to some reasonable trial strategy. See Ortiz,
93 S.W.3d at 88-89.

 Finally, McClure argues that defense counsel's representation was deficient because
defense counsel failed to object to the State's argument during closing directing the jury to
consider McClure's prior offenses. Permissible jury argument includes summation of the evidence,
reasonable deduction from the evidence, answer to argument of opposing counsel, and plea for law
enforcement. Allridge v. State, 762 S.W.2d 146, 155 (Tex. Crim. App. 1988). To warrant reversal,
argument must be manifestly improper, violate a statute, or inject new, harmful facts into the case. 
Everett v. State, 707 S.W.2d 638, 640 (Tex. Crim. App. 1986). The jurors knew from the testimony
that McClure had been convicted of multiple prior offenses for assaultive conduct. At the time such
testimony was admitted, no limiting instruction was requested or given. By the time of the State's
closing argument, jurors may already have concluded that the admitted testimony showed McClure's
general propensity toward violence or assaultive conduct. Therefore, even if failure to object to this
argument during closing amounted to deficient performance, it did not unfairly prejudice McClure.

 We find no basis for McClure's claim of ineffective assistance of counsel. 
Accordingly, we overrule McClure's fourth through seventh issues.

 In his eighth issue, McClure argues that his due process rights were violated when
he was shackled during the punishment phase of trial. Although the routine use of shackles during
the guilt/innocence phase of a criminal trial is generally prohibited, the use of shackles may be
justified in certain circumstances. Long v. State, 823 S.W.2d 259, 282 (Tex. Crim. App. 1991);
Wynn v. State, 219 S.W.3d 54, 59 (Tex. App.--Houston [1st Dist.] 2006, no pet.). Moreover, the
United States Supreme Court recently held that this general prohibition also applies when a
defendant is shackled during the punishment phase of trial. See Deck v. Missouri, 544 U.S. 622,
630-33 (2005). A court's finding that shackling is justified is reviewed for abuse of discretion. 
Long, 823 S.W.2d at 282; Wynn, 219 S.W.3d at 60.

 On the second day of the punishment phase of McClure's trial, the district court
expressly found that shackling was justified, and McClure remained shackled before the jury for the
remainder of the punishment phase of the trial. All efforts should be maintained to prevent the jury
from seeing the defendant in shackles, except where there has been a showing of exceptional
circumstances or a manifest need for such restraint. Long, 823 S.W.2d at 282; Wynn, 219 S.W.3d
at 61. The general need for courtroom security or a general reference to the severity of the charged
offense is insufficient to justify shackling. Long, 823 S.W.2d at 283; Wynn, 219 S.W.3d at 59. 
Factors that can be considered to determine whether shackling is justified include evidence of a
possible attempt to escape, acts or threats of physical violence in court, behavior in court that is
disruptive, unruly, or non-conforming, behavior in custody that is aggressive and volatile, and a
violent criminal history. United States v. Fields, 483 F.3d 313, 356-57 (5th Cir. 2007); Boone
v. State, 230 S.W.3d 907, 911 (Tex. App.--Houston [14th Dist.] 2007, no pet.).

 According to the district court, McClure's shackling was justified because of his
history of assaults, his assaultive behavior in custody, and his verbal outburst in court during a
pretrial hearing. See Culverhouse v. State, 755 S.W.2d 856, 860 (Tex. Crim. App. 1988) (record
must affirmatively reflect reasons for shackling, not in general terms but with particularity). During
the previous day of the punishment phase, the court had heard testimony of McClure's criminal
history over the past ten years, which included, in addition to the aggravated robbery for which he
had been found guilty in the present case, three misdemeanor assaults, an "attempted resisting,"
and an aggravated assault with a deadly weapon. The court had also heard testimony of McClure's
aggressive and volatile history over the past year in custody, which included multiple fights
with other inmates, one of which required the other inmate to have surgery on his face, multiple
incidents of threats made to other inmates, and several instances of defiant behavior toward
correction officials.

 We recognize that the district court did not find that McClure had acted dangerously
or disruptively during the guilt/innocence phase of the trial, or that new events had occurred to
prompt shackling during the remainder of the trial. McClure's history of assaults, assaultive
behavior in custody, and verbal outburst in court all preceded the guilt/innocence phase, during
which he was unshackled without incident. Nevertheless, while another judge might have ruled
differently, upon our review of the district court's reasons stated on the record for McClure's
shackling, we conclude that McClure has not shown that there was an abuse of discretion. We
decline to hold that the mere fact that McClure demonstrated good conduct during one phase of the
trial means that the decision to restrain him was an abuse of discretion, in light of his extensive
history of violence and assaultive conduct. See Culverhouse, 755 S.W.2d at 860. We conclude that
the trial court acted within its discretion in allowing the use of shackles. Accordingly, we overrule
McClure's eighth issue.

 Having overruled each of McClure's issues, we affirm the judgment of conviction.



 __________________________________________

 G. Alan Waldrop, Justice

Before Chief Justice Law, Justices Waldrop and Henson

Affirmed

Filed: December 4, 2008

Do Not Publish
1. The only weapon found in the house during the investigation was a pistol located in a
zipper case inside a closed drawer and underneath some clothing.
2. "Robin" was later identified to be "Robbie Delphine," another name by which McClure
was known.