

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

---

### NO. 02-09-00258-CR

---

TYRELL A. JACKSON                                                          APPELLANT

V.

THE STATE OF TEXAS                                                              STATE

------------

FROM THE 371ST DISTRICT COURT OF TARRANT COUNTY

------------

# MEMORANDUM OPINION[1] ON APPELLANT'S
# PETITION FOR DISCRETIONARY REVIEW

------------

## I. Introduction

Pursuant to Texas Rule of Appellate Procedure 50, we have reconsidered our prior opinion on receiving Appellant Tyrell A. Jackson's petition for discretionary review. *See* Tex. R. App. P. 50. We withdraw our opinion and judgment of August 31, 2010, and substitute the following in its place.

---

[1] ... *See* Tex. R. App. P. 47.4.

In two points, Jackson appeals his sentence for aggravated assault with a deadly weapon. We affirm.

## II. Factual and Procedural Background

On June 22, 2007, Jackson pleaded guilty to aggravated assault with a deadly weapon in exchange for ten years' deferred adjudication community supervision and a $500 fine. Part of his community supervision terms and conditions included that he pay a supervision fee of $60 per month, a $20 crime stoppers fee, the $500 fine, attorney's fees in the amount of $1,700, and court costs in the amount of $276.

At the July 17, 2009 hearing on the State's first amended petition to proceed to adjudication, Jackson pleaded true to the allegations contained within paragraphs 2, 4A, 4B, 5A, 5B, 6, 8A, and 8B.[2] Jackson's community supervision officer testified

_____

[2]... That is, that Jackson:

2. Failed to attend Fee Docket by leaving the District 371st Courtroom prior to being released by the Court on or about April 7, 2009.

4A. Failed to attend Intensive Day Treatment Aftercare, on or about November 24, 2008; December 11, 2008; and December 17, 2008.

4B. Was unsuccessfully discharged from Intensive Day Treatment Aftercare on or about December 18, 2008, because he violated condition 4A.

5A. Failed to submit a urine sample for testing on or about November 10, 2008.

5B. Submitted a diluted urine sample on or about December 29, 2008.

6. Failed to report as scheduled by his community supervision officer during January and May 2008.

that Jackson failed to attend fee docket but also that Jackson went to court on April 7, 2009, was told that he needed to make a payment, and paid some money that day. Jackson testified that on April 7, 2009, he left court and made a $150 payment. When he returned to court, no one called his name so he "took it upon [him]self to leave" because he did not know what he was supposed to do. He attributed missing the three days of his Intensive Day Treatment Aftercare and missing his urine test to car trouble, his failure to report in January and May 2008 to homelessness, and his failure to make his supervision and crime stoppers fee payments to unemployment.

The trial court found the allegations in paragraphs 2, 4A, 4B, 5A, 5B, 6, 7,[3] 8A, and 8B to be true and adjudicated Jackson guilty of aggravated assault with a deadly weapon. It found the deadly weapon allegation to be true and assessed punishment at fourteen years' confinement. The trial court added a special finding on

---

8A. Failed to pay his $60/month supervision fee in July, September, and December 2007; in all but two months (May, December) in 2008; and January, March, and May 2009.

8B. Failed to pay his $20 crime stoppers fee within thirty days from the date of community supervision.

  [3]... Paragraph 7 alleged that on or about April 8, 2009, Jackson failed to remain in Tarrant County and moved to Irving, Texas, without authorization from the court or his community supervision officer. Jackson's community supervision officer testified that he told her that he had moved to Irving, Texas. Jackson said that he lied about moving to Irving because he needed to give his community supervision officer an address and his mother would not let him use hers.

3

reparations, in the amount of $3,291.50,[4] to the written judgment entered on July 24, 2009. This appeal followed.

### III. Punishment

In his first point, Jackson complains that his fourteen-year sentence "for marginal technical violations of probation was an abuse of the trial court's discretion, disproportional[,] and in violation of the 8[th] Amendment . . . prohibition of cruel and unusual punishment."

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. Tex. R. App. P. 33.1(a)(1); *Mosley v. State*, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070 (1999). Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule. Tex. R. App. P. 33.1(a)(2); *Mendez v. State*, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004). When an appellant fails to object that his sentence is disproportionate either at the time it is imposed or in a motion for new trial, nothing is preserved for our review. *Kim v. State*, 283 S.W.3d 473, 475 (Tex. App.—Fort Worth 2009, pet.

---

[4] A report from the Tarrant County Community Supervision and Corrections Department in the trial court's file stated that, as of July 23, 2009, Jackson's probation fees, fines, court costs, and attorney's fees amounted to $3,291.50.

ref'd); *see also Mercado v. State*, 718 S.W.2d 291, 296 (Tex. Crim. App. 1986) (stating that, as a general rule, appellant may not assert error pertaining to his sentence or punishment when he failed to object or otherwise raise such error in the trial court); *Noland v. State*, 264 S.W.3d 144, 152 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) (holding that when appellant failed to object to his sentence at the punishment hearing or to complain about it in his motion for new trial, he failed to preserve his Eighth Amendment complaint that the punishment assessed was "grossly disproportionate and oppressive"); *Wynn v. State*, 219 S.W.3d 54, 61 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (holding that defendant's failure to object to his sentence of life imprisonment as cruel and unusual punishment waived error).

Jackson's complaint about the alleged disproportionality of his sentence was not raised at the time it was imposed or in his motion for new trial.[5] Therefore, he has preserved nothing for our review. *See Kim*, 283 S.W.3d at 475; *Noland*, 264 S.W.3d at 151–52. We overrule Jackson's first point.[6]

---

[5] Jackson filed a motion for new trial, complaining that the verdict was contrary to the law and evidence and alleging the discovery of new evidence favorable to him since trial. The motion does not appear to have been presented to the trial court, it was not ruled upon, and it does not raise his Eighth Amendment complaint.

[6] Further, punishment imposed within statutory limits is generally not subject to challenge for excessiveness. *See Kim*, 283 S.W.3d at 475. Jackson was warned that he faced the full range of punishment for the original offense—two to twenty years' confinement and up to a $10,000 fine—if the trial court revoked his deferred adjudication community supervision. *See* Tex. Penal Code Ann. §§ 12.33, 22.02(b) (Vernon Supp. 2010).

## IV. Reparations

In his second point, Jackson makes the following arguments:  The order to pay $3,291.50 is invalid and should not be included in the judgment because Jackson was indigent and the applicable governing statute is article 26.05(g) of the code of criminal procedure.  He appears to argue both that the entire amount is invalid and that the attorney's fees portion, individually, is invalid.  Further, he states,

> The only information in the record that appears to relate to [the reparations] entry is a document addressed to the presiding Judge from the Community Supervision and Corrections Department identified as a "revocation restitution/reparation balance sheet" citing Article 42.03 Sec. 2b Code of Criminal Procedure.  This document appears to tally figures including probation fees, court costs and attorney[']s fees.  It is date[d] July 23, 2009[,] a full six days after the judgment adjudicating Appellant's guilt was orally announce[d] in open court.  The logical conclusion is that this information was received and added to the written judgment signed on July 24, 2009[,] well after the conclusion of any court proceedings.[7]

He also argues that article 42.03, section 2(b) says nothing about attorney's fees or amounts other than "restitution or reparation," there was never any restitution ordered either when Jackson was placed on community supervision or afterward, and that reparation and restitution both refer to the same thing:  an amount to be

---

[7] ... This appears to us to be a complaint that the reparation finding was ordered too late.

paid to the victim of a crime.[8]  Finally, he compares his case to *Mayer v. State*, 309

S.W.3d 552 (Tex. Crim. App. 2010).

Section 2(b) of article 42.03 of the code of criminal procedure states that "[i]n

all revocations of a suspension of the imposition of a sentence the judge shall enter

the restitution or reparation due and owing on the date of the revocation."  Tex. Code

Crim. Proc. Ann. art. 42.03, § 2(b) (Vernon Supp. 2010).  Section 11(a)(11) of article

42.12 states that conditions of community supervision may include, as here,

conditions that the defendant shall "reimburse the county in which the prosecution

was instituted for compensation paid to appointed counsel for defending the

defendant in the case, if counsel was appointed[.]"  *See* Tex. Code Crim. Proc. Ann.

art. 42.12, § 11(a)(11) (Vernon Supp. 2010); *see also id.* § 5(a) (Vernon Supp. 2010)

(stating that for deferred adjudication community supervision, "[t]he judge may . . .

require any reasonable conditions of community supervision . . . that a judge could

impose on a defendant placed on community supervision for a conviction that was

probated and suspended, including confinement").  Other basic conditions of

community supervision may include, as here, paying a fine, court costs, and a crime

stoppers fee.  *See id.* § 11(a)(8), (21).  In assessing payments as a term or condition

---

[8] ... Jackson has provided no briefing on this sub-argument.  *See* Tex. R. App.
P. 38.1(i).  Nonetheless, we note that while "restitution" has its own section in the
code of criminal procedure and is payable to any victim of the offense,  "reparation"
is not defined in the code of criminal procedure, and this court has treated them as
separate terms.  *See* Tex. Code Crim. Proc. Ann. art. 42.037(a) (Vernon Supp.
2010); *Brown v. State*, No. 02-08-00063-CR, 2009 WL 1905231, at *2 (Tex.
App.—Fort Worth July 2, 2009, no pet.) (mem. op., not designated for publication).

of community supervision, the trial court "shall consider the ability of the defendant to make payments." *Id.* § 11(b). There is no indication in the record that the trial court failed to consider his ability to pay when it imposed these conditions in June 2007.[9] *See id.* § 11(b).

The unadjudicated judgment on plea of guilty and suspending imposition of sentence, signed on June 22, 2007, reflects that Jackson pleaded guilty and received ten years' deferred adjudication community supervision, as well as a $500 fine (not suspended), attorney's fees in the amount of $1,700, and court costs in the amount of $276, "payable to and through the District Clerk of Tarrant County,

---

[9] Jackson waived the attendance and record of a court reporter for his plea bargain in the written plea admonishments, but the record reflects that Jackson had sufficient financial resources to retain counsel in October 2006, before he filed three different election of counsel forms between November 20 and December 18, 2006.

On his November 20 election of counsel form, Jackson initialed the option stating, "Yes, I believe that I am entitled to an appointed lawyer," and attached an affidavit of indigency that reflected two dependents, his employer's address and supervisor's name, total gross monthly income of $3,000 and total monthly expenses of $1,500, $600 per month in rent, two 2002 automobiles worth $14,000 total, and $1,100 in his "checking-savings" account. On his December 4 election of counsel form, Jackson initialed the option stating, "No, I am not entitled to an appointed lawyer."

On his December 18 election of counsel form, Jackson again initialed the option showing that he believed he was entitled to an appointed lawyer. In the attached affidavit of indigency, he shows three dependents, his employer's address and supervisor's name, $4,000 in total gross monthly income and $2,200 in total monthly expenses, the two 2002 vehicles, and $1,500 in his checking account, and he totals the value of his assets as $15,500.

Texas." Jackson's conditions of community supervision, filed on the same day the deferred adjudication order was signed, reflect in condition 12 that Jackson was to:

> Pay the following to and through the Community Supervision and Corrections Department of Tarrant County, Texas. The first payment on the above to be made on the 15th of July, 2007, and like payments on the 15th day of each month thereafter until full payments are made. (unless otherwise specified)
>
> a. RESTITUTION in the amount of $_____, at the rate of $_____ per month.
>
> b. SUPERVISION FEE in the amount of $60.00, each month during the period of supervision.
>
> c. CRIME STOPPERS FEE in the amount of $20.00 to be paid within 30 days from the date shown above.
>
> Pay the following to and through the District Clerk of Tarrant County, Texas. Payment schedule to be determined by the District Clerk of Tarrant County, Texas.
>
> d. FINE in the amount of $500.00. ATTORNEY FEE in the amount of $1,700. COURT COSTS in the amount of $276. _____ in the amount of $____.

Because Jackson waived having a court reporter at his plea bargain hearing, there is nothing in the record to show that Jackson objected to any of these conditions in the trial court. And the record does not indicate that he ever filed a petition for writ of habeas corpus to challenge any of these conditions. *See* Tex. Code Crim. Proc. Ann. art. 11.072 (Vernon 2005).

Contrary to Jackson's argument in his original brief and in his petition for discretionary review, we believe article 42.03, section 2(b) controls here, rather than *Mayer* and article 26.05(g).[10]

In *Mayer*, on direct appeal after being found guilty and having punishment assessed, the Amarillo Court of Appeals sustained Mayer's "repayment of appointed attorney's fees" issue. 309 S.W.3d at 553. The trial court had included court-appointed attorney's fees in its oral pronouncement of sentence and the amount, $2,850, in the written judgment. *Id.* The Amarillo court relied on article 26.05(g), the fact that the record did not include any determination or finding by the trial court that Mayer had any financial resources or was able to pay the fees, and Mayer's indigence and qualification for appointed counsel to support its decision. *Id.*

The court of criminal appeals stated that, based on article 26.05(g), "the defendant's financial resources and ability to pay are explicit critical elements in the trial court's determination of the propriety of ordering reimbursement of costs and fees." *Mayer*, 309 S.W.3d at 556. And the court further relied on article 26.04(p),

---

[10] ... Article 26.05(g) states,

> If the court determines that a defendant has financial resources that enable him to offset in part or in whole the costs of the legal services provided, including any expenses and costs, the court shall order the defendant to pay during the pendency of the charges or, if convicted, as court costs the amount that it finds the defendant is able to pay.

Tex. Code Crim. Proc. Ann. art. 26.05(g) (Vernon Supp. 2010).

which states that a defendant who has been determined by the court to be indigent is presumed to remain indigent for the remainder of the proceedings in the case unless a material change in the defendant's financial circumstances occurs, to sustain the Amarillo court's judgment in the face of the State's argument that remand for a redetermination of financial status was more appropriate than rendition. *Id.* at 557.

In the court of criminal appeals, the State argued that Mayer failed to preserve the issue because he did not object in the trial court or in a motion for new trial, comparing Mayer's failure to object to "a situation in which an appellant first challenges on appeal probation conditions that may be unreasonable, unconstitutional, or violative of statutory provisions." *Id.* at 554 (referencing *Speth v. State*, 6 S.W.3d 530, 534 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1088 (2000)).[11] However, Mayer couched his issue as an evidentiary sufficiency challenge that did not require preservation for direct appeal. *Id.* at 554–55. The court did not address *Speth* or article 42.03, section 2(b), but it did not need to, as Mayer's case involved a direct appeal from a jury trial and not a revocation of deferred adjudication community supervision.

---

[11] The court of criminal appeals noted in *Speth* that section 11(b)'s provision prohibiting the trial court from imposing payments without considering the defendant's ability to make the payments could be affirmatively waived by a defendant entering into a probation contract containing such terms without objection. *Speth*, 6 S.W.3d at 534 n.8.

The Amarillo court has recently addressed the inclusion of attorney's fees in a judgment of conviction after the revocation of a deferred adjudication community supervision. *Reyes v. State*, No. 07-10-00124-CR, 2010 WL 4008534, at *1–2 (Tex. App.—Amarillo Oct. 13, 2010, no pet. h.). Reyes was placed on deferred adjudication after he pleaded guilty to aggravated assault with a deadly weapon and, as a condition of his community supervision, he was ordered to pay attorney's fees of $750. *Id.* at *1. After the State moved to revoke his community supervision, the trial court granted the motion, sentenced Reyes to ten years in prison, and ordered him to pay attorney's fees of $1,050, and other amounts not pertinent to our discussion here. *Id.* Reyes appealed, complaining that the trial court erred by ordering him to pay $1,050 in attorney's fees because the record "contained insufficient evidence to show that he 'had any financial resources' from which to pay them." *Id.* The Amarillo court agreed only in part, stating,

> This court previously held, in *Mayer v. State*, 274 S.W.3d 898 (Tex. App.—Amarillo 2008), *aff'd*, 309 S.W.3d 552 (Tex. Crim. App. 2010), that a trial court generally erred by ordering a defendant to pay a fee for a court-appointed attorney when the record contained no evidence illustrating that he had sufficient financial resources to pay it. *Id.* at 901–02. Yet, we were not dealing with fees arising from a plea bargain and levied as a condition of probation there. In the latter circumstance, the result may not be the same. This is so because an award of community supervision (or probation) is not a right, but a contractual privilege. *Speth v. State*, 6 S.W.3d 530, 534 (Tex. Crim. App. 1999). Additionally, the conditions appended to the grant of community supervision are terms of the contract entered into between the trial court and the defendant. *Id.* More importantly, those to which no one objects are considered to be affirmatively accepted as part of the contract, which means, in turn, that the accused normally waives any

12

complaint with regard to them. *Id.* In other words, one benefitting from the contractual privilege of probation must complain at trial about any conditions he deems objectionable, and unless he does that, belated objections are waived. *Id.*

Given *Speth*, we agree with the State that appellant should have complained to the trial court about the condition of his probation obligating him to pay $750 in attorney's fees at the time the condition was imposed. Because he did not, he not only affirmatively accepted it but also waived any objection to it. The same is not true of the additional $300 assessed once appellant was adjudicated guilty; the imposition of that sum is controlled by the holding in *Mayer*. And, because the record does not reflect that appellant had the financial means to pay it, the trial court erred by imposing it. Accordingly, we modify the trial court's judgment by reducing the amount of attorney's fees payable by appellant from $1,050 to $750.

*Id.* at *1–2.

Here, the record reflects that the amount of reparation included in the second judgment is the same as the amount included in the deferred adjudication community supervision terms and conditions, to which Jackson made no objection in 2007. *See id.* As in *Reyes*, because Jackson did not object, he not only affirmatively accepted the amount but also waived any objection to it now. *See id.* Additionally, because article 42.03, section 2(b) states that the trial court in a revocation "*shall* enter the restitution or reparation due and owing on the date of the revocation," upon revoking Jackson's community supervision, the trial court had no choice but to enter the amount of reparation due and owing when it signed the written judgment. *See* Tex. Code Crim. Proc. Ann. art. 42.03, § 2(b) (emphasis added); *see also Armstrong v. State*, 320 S.W.3d 479, 481 (Tex. App.—Amarillo

13

2010, pet. granted) (stating that costs in clerk's bill of costs did not have be incorporated by reference into the judgment to be valid, citing *Weir v. State*, 278 S.W.3d 364, 366–67 (Tex. Crim. App. 2009)); *Brown*, 2009 WL 1905231, at *2 (holding that because reparations are not punishment and part of the sentence, they do not have to be included in the trial court's oral pronouncement of sentence to be properly included in the written judgment). We overrule Jackson's second point.

## V. Conclusion

Having overruled both of Jackson's points, we affirm the trial court's judgment.


PER CURIAM

PANEL: MCCOY, GARDNER, and WALKER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: December 23, 2010