**Opinion filed August 31, 2011**



# In The

# Eleuenth Court of Appeals

_____

## Nos. 11-10-00284-CR & 11-10-00285-CR

_____

**BODIE CHARLES HOOPER, Appellant**

**V.**

**STATE OF TEXAS, Appellee**

**On Appeal from the 32nd District Court**

**Fisher County, Texas**

**Trial Court Cause Nos. 3382A & 3381**

## MEMORANDUM OPINION

Bodie Charles Hooper entered an open plea of guilty to the offenses of arson, a first-degree felony, and prohibited sexual conduct, a third-degree felony. TEX. PENAL CODE ANN. §§ 25.02, 28.02(d)(2) (Vernon 2011). In Cause No. 11-10-00284-CR (Trial Court Cause No. 3382A), the trial court assessed punishment on the arson conviction at confinement in the Institutional Division of the Texas Department of Criminal Justice for a term of forty-five years. The trial court additionally imposed a fine of $10,000 on the arson conviction. In Cause No. 11-10-00285-CR (Trial Court Cause No. 3381), the trial court assessed his punishment on the

prohibited sexual conduct conviction at confinement in the Institutional Division of the Texas Department of Criminal Justice for a term of ten years. Additionally, the trial court ordered that the sentences are to run concurrently. Appellant challenges his punishment in a single issue in each appeal. We affirm.

*Background Facts*

Appellant's conviction for prohibited sexual conduct arises from his act of engaging in sexual intercourse with his stepdaughter. J.H. was nineteen years old at the time of trial. Her mother testified that J.H. had learning difficulties and that she functioned on a fourth to sixth grade level. J.H. testified that, after the family moved to Snyder, appellant began showing her inappropriate magazines and touching her breasts and private area. She testified that this conduct happened "a lot" and that it progressed to the point where appellant began penetrating her private area with his fingers. When the family moved to near Hermleigh, appellant began making J.H. have sexual intercourse with him. She testified that the sexual intercourse occurred "a lot." On at least one occasion, appellant also forced her to perform oral sex on him. During the course of his relations with J.H., appellant told her to tell her mother that she was having sexual intercourse with her boyfriend so that her mother would place her on birth control.

J.H. initially reported appellant's conduct to her brother in the summer of 2009, and he reported it to their mother. J.H.'s mother confronted appellant with J.H.'s accusation while they were returning home from an out-of-town trip. When they returned home, appellant spoke with J.H. before her mother spoke with her. J.H. testified that appellant forced her to tell her mother that she lied about the allegations.

J.H., her mother, and brother continued to live with appellant after this initial report. J.H.'s mother, F.J.H., testified that appellant began drinking heavily during this period and that he became verbally abusive. On one occasion, appellant threatened F.J.H. with a shotgun, and he discharged it inside their home. Tensions between appellant and F.J.H. reached a breaking point in October 2009 when appellant asked F.J.H. to take him to his drug dealer in Snyder after he returned from an out-of-town trip. F.J.H. decided to leave appellant at this time. F.J.H., J.H., and J.H.'s brother left the home. J.H. repeated her accusations against appellant to F.J.H. at this time. F.J.H. contacted authorities in Fisher County, and they began an investigation.

F.J.H. spoke with appellant by telephone on October 7, 2009. He begged her to come back home and work things out. He also threatened to kill her if she did not agree to take him

back.  On October 8, 2009, appellant informed F.J.H. that he was having a sale and that she should come get whatever items at their house that she wanted.  When she declined, he informed her that he was in the process of pouring gasoline on the home so that he could burn it down.  He also warned her not to send anyone out to try to stop him.  F.J.H. contacted authorities in Fisher County regarding appellant's threats.  By the time the authorities arrived at the house, it was fully engulfed in flames.  J.H. and F.J.H. testified that they lost everything they owned in the fire other than a few articles of clothing in their possession.

Appellant presented several witnesses at the punishment hearing.  These witnesses consisted of coworkers and members of appellant's church.  They testified that, in the eight or nine months following the fire, appellant had changed his life by not drinking and by regularly attending church.

*Issue*

In a single issue, appellant alleges ineffective assistance of counsel.  He contends that trial counsel was ineffective because he failed to preserve error on a claim of excessive punishment by failing to either object to the sentence imposed or present the contention in a motion for new trial.

*Analysis*

To determine whether appellant's counsel rendered ineffective assistance at trial, we must first determine whether appellant has shown that counsel's representation fell below an objective standard of reasonableness and, if so, then determine whether there is a reasonable probability that the result of the proceeding would have been different but for counsel's errors. *Wiggins v. Smith*, 539 U.S. 510 (2003); *Strickland v. Washington*, 466 U.S. 668 (1984); *Andrews v. State*, 159 S.W.3d 98 (Tex. Crim. App. 2005); *Thompson v. State*, 9 S.W.3d 808 (Tex. Crim. App. 1999). This standard applies to claims of ineffective assistance of counsel in both the guilt/innocence phase and the punishment phase of noncapital trials. *Hernandez v. State*, 988 S.W.2d 770, 773 (Tex. Crim. App. 1999).

We must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and an appellant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Strickland*, 466 U.S. at 689; *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant

decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. An allegation of ineffective assistance must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson*, 9 S.W.3d at 814. Under normal circumstances, the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking as to overcome the presumption that counsel's conduct was reasonable and professional. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). Rarely will the record on direct appeal contain sufficient information to permit a reviewing court to fairly evaluate the merits of such a serious allegation. *Id.* In a majority of cases, the record on direct appeal is simply undeveloped and cannot adequately reflect the failings of trial counsel. *Id.*

The Eighth Amendment to the United States Constitution prohibits cruel and unusual punishment. U.S. CONST. amend. VIII. This prohibition serves as the legal basis for a claim of an excessive sentence. As correctly noted by appellant, a complaint of an excessive sentence is waived if it is not preserved for review either by an objection at the time it was imposed or in a motion for new trial. *See Wynn v. State*, 219 S.W.3d 54, 61 (Tex. App.—Houston [1st Dist.] 2006, no pet.); *Castaneda v. State*, 135 S.W.3d 719, 723 (Tex. App.—Dallas 2003, no pet.). Counsel's failure to preserve an excessive-sentence complaint does not, in and of itself, constitute ineffective assistance of counsel. To show ineffective assistance of counsel based on the failure to preserve error, appellant must show that the trial court would have committed error in either overruling the objection to the sentence or overruling a motion for new trial complaining of an excessive sentence. *See Ex parte White*, 160 S.W.3d 46, 53 (Tex. Crim. App. 2004). We conclude that the trial court would not have committed error in overruling either of these complaints had they been presented by trial counsel.

The legislature is vested with the power to define crimes and prescribe penalties. *See State ex rel. Smith v. Blackwell*, 500 S.W.2d 97, 104 (Tex. Crim. App. 1973); *Simmons v. State*, 944 S.W.2d 11, 15 (Tex. App.—Tyler 1996, pet. ref'd); *Davis v. State*, 905 S.W.2d 655, 664 (Tex. App.—Texarkana 1995, pet. ref'd). As a general rule, punishment is not cruel and unusual if it falls within the range of punishment established by the legislature. *Jackson v. State*, 680 S.W.2d 809, 814 (Tex. Crim. App. 1984); *Dale v. State*, 170 S.W.3d 797, 799 (Tex. App.—Fort Worth 2005, no pet.); *Rodriguez v. State*, 71 S.W.3d 778, 779 (Tex. App.—Texarkana 2002, no pet.). "[O]utside the context of capital punishment, successful challenges to the proportionality

4

of particular sentences [will be] exceedingly rare." *Solem v. Helm*, 463 U.S. 277, 289-90 (1983) (quoting *Rummel v. Estelle*, 445 U.S. 263, 272 (1980)). A narrow exception to this rule is recognized where the sentence is grossly disproportionate to the offense. *Harmelin v. Michigan*, 501 U.S. 957 (1991); *Solem*, 463 U.S. at 290-91; *Dale*, 170 S.W.3d at 799. A prohibition against grossly disproportionate sentences survives under the federal constitution apart from any consideration of whether the punishment assessed is within the statute's range. *Delacruz v. State*, 167 S.W.3d 904, 906 (Tex. App.—Texarkana 2005, no pet.).

Texas courts have followed the Fifth Circuit's analysis for addressing Eighth Amendment proportionality complaints. *McGruder v. Puckett*, 954 F.2d 313 (5th Cir.1992). This requires that we first conduct a threshold comparison of the gravity of the offense underlying the current conviction, as well as the offenses underlying any prior convictions, against the severity of the sentence. *Id*. at 316. The test is whether the sentence is grossly disproportionate to the gravity of the offenses upon which the sentences are based. *See Winchester v. State*, 246 S.W.3d 386, 390 (Tex. App.—Amarillo 2008, pet. ref'd). We consider the gravity of the offense in light of the harm caused or threatened to the victim or society and the culpability of the offender. *Solem*, 463 U.S. at 291-92.

Appellant's sentences were not grossly disproportionate to the offenses. He pleaded guilty to a first-degree felony and a third-degree felony. His sentences fell within the ranges of punishment established by the legislature for these offenses. The details of the conduct with which he was charged were particularly egregious considering that they involved sexual conduct with his mentally challenged stepdaughter and the fact that he destroyed all of his family's possessions by burning their home. Evidence was also offered indicating that he had committed other offenses, including the repeated commission of prohibited sexual conduct with the same victim on numerous occasions. Furthermore, appellant's mitigation evidence was not so compelling as to have required a lesser sentence.[1] His alleged behavior change occurred only after his arrest.

Considering all of the facts and circumstances, appellant's sentences were not grossly disproportionate. Accordingly, trial counsel's representation did not fall below an objective

---

[1] Appellant's mitigation evidence included statements to the effect that he had been making payments to F.J.H. and that insurance had paid her for the fire loss. There was no evidence pertaining to the amount of the payments he had been making to F.J.H. or the purpose for them. In this regard, the spouses were in the process of getting a divorce. Additionally, appellant's reliance on insurance payments made for a fire that he intentionally set is dubious at best.

standard of reasonableness in not preserving an excessive-sentence complaint for review. Furthermore, the record does not show that the result of the proceedings would have been different had trial counsel presented this complaint. Appellant's sole issue in each appeal is overruled.

*This Court's Ruling*

The judgments of the trial court are affirmed.


JIM R. WRIGHT

CHIEF JUSTICE


August 31, 2011

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Kalenak, J.